# United States Court of Appeals
## For the First Circuit

No. 13-1701

UNITED STATES OF AMERICA,

Appellee,

v.

CAREY GONYER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard and Thompson, Circuit Judges,
and Laplante,* District Judge.

Hunter J. Tzovarras for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

August 4, 2014

---

*Of the District of New Hampshire, sitting by designation.

**LAPLANTE, District Judge.**  In 2010, Carey Gonyer began sexually abusing a fifteen-year-old boy, "TT", who worked alongside him at a dairy farm.  The following year, at Gonyer's urging, TT-- who had, in the interim, turned sixteen--took photographs of his own genitals and gave the pictures to Gonyer.  Based on these photographs, Gonyer was charged with three counts of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and 2256(2), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A).

The case proceeded to trial, where the district court, over Gonyer's objection, permitted the prosecution to elicit testimony about Gonyer's sexual abuse of TT.  The jury convicted Gonyer on all four counts.  At sentencing, the district court applied several Sentencing Guideline enhancements, based on TT's age at the time his relationship with Gonyer began, the fact that Gonyer's offenses included a sexual act or contact, and Gonyer's supervisory control over TT, see U.S.S.G. § 2G2.1(b), resulting in a sentence of 420 months' imprisonment.  Gonyer appeals both his conviction and sentence.  Because the sexual abuse evidence was admissible under Federal Rule of Evidence 404(b) to, among other things, establish Gonyer's motive for the offenses and show that his possession of the photographs of TT was not a matter of mistake or accident, and because the sentencing enhancements were permissible under Guidelines § 2G2.1(b), we affirm.

-2-

# I. BACKGROUND

In 2010, Gonyer, who was 41 years old, resided in an apartment at the dairy farm where he was employed as a farmhand.[1] In the spring of that year, TT, a fifteen-year-old boy who lived nearby, began working on the farm as well, helping Gonyer to clean animal pens, feed and milk the cows, and perform various other chores. TT had not previously done this kind of work, and Gonyer taught him what to do.

At first, because school was still in session, TT worked at the farm only on weekends. After school let out for the summer, TT began working at the farm every day. Gonyer supervised TT's work, and frequently tendered his paycheck. TT also began spending time with Gonyer outside of work. The two would drive to a nearby city, where Gonyer would buy TT gifts (including a stereo, a B.B. gun, clothing, cigarettes, and a DVD of adult pornography). They also spent time together watching television in Gonyer's apartment.

About a month after TT began working at the farm, he spent the night at Gonyer's apartment because he anticipated having to awaken early the next morning to milk the cows. The two began the evening watching television, per usual, but at some point Gonyer suggested that they watch a DVD of adult pornography. While watching this DVD, Gonyer began touching TT's genitals; this

---

[1]Out of concern for TT's privacy (and that of other faultless individuals associated with the farm), we do not mention any specifics, such as the name of the farm or its environs.

contact eventually led to anal intercourse. Over the next several months, TT spent most nights at Gonyer's apartment, and Gonyer regularly engaged in sexual acts with TT.

When fall came, TT returned to school and only worked at the farm on weekends, until winter, when the amount of work at the farm dwindled. While TT was not working at the farm, Gonyer remained in touch with him via cellular phone. Gonyer and TT would exchange text messages, some of which were sexual in nature. The following summer, following his sixteenth birthday, TT began working on the farm on a full-time basis again, and Gonyer resumed sexually abusing him.

Gonyer and TT continued text-messaging one another. On three different occasions in the summer and fall of 2011, Gonyer requested that TT take a picture of his own penis and send it, via cell phone, to Gonyer. TT complied. On another occasion, while TT and Gonyer were working on a piece of machinery at the farm, Gonyer asked TT to take a picture of TT's penis using Gonyer's phone. TT again complied, retreating to the farmhouse's cellar to complete the task while Gonyer remained outside.

Gonyer's sexual abuse of TT, and the photographs TT had taken at Gonyer's urging, were discovered later in 2011, when TT divulged the abuse to his school guidance counselor. A grand jury returned an indictment charging Gonyer with the aforementioned

counts of child sexual exploitation and possession of child pornography. Gonyer pleaded not guilty.

On the eve of trial, Gonyer moved in limine to preclude TT from testifying to Gonyer's acts of sexual abuse. Conceding that testimony regarding the abuse was potentially relevant under Rule 404(b) of the Federal Rules of Evidence "to show motive, plan or intent," Gonyer argued that it was nonetheless inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. The following day, before the prosecution had responded, the district court denied the motion on the record at an in-chambers conference, reasoning that TT's testimony regarding the sexual abuse would establish that Gonyer's alleged conduct in enticing TT to take the photographs was "not a matter of mistake or accident," and that any prejudice to Gonyer from the admission of this testimony could be cured by instructing the jury that it could not treat Gonyer's prior abuse of TT as character evidence. In its jury charge at the close of the case, the court gave just such an instruction, cautioning the jury that it could not use evidence of the abuse to infer that Gonyer had committed the offenses with which he was charged.

After about three hours of deliberations, the jury convicted Gonyer of all four counts. Following the conviction, the probation office prepared a Presentence Investigation Report ("PSR") for Gonyer. As is relevant here, for the three counts of

sexual exploitation of a child, the PSR recommended a two-level increase to the base offense level of 32 because TT was fifteen years old when his relationship with Gonyer began, see U.S.S.G. § 2G2.1(b)(1)(B); another two-level increase because Gonyer had engaged in oral and anal sex with TT, see id. § 2G2.1(b)(2)(A); and a third two-level increase because TT had been in Gonyer's care, custody, or control, see id. § 2G2.1(b)(5).[2]  Gonyer objected to these increases in a sentencing memorandum, which argued that the enhancements were unwarranted because the pictures Gonyer had persuaded TT to take did not depict any sexual acts, and because TT was sixteen and not "spending the night at Mr. Gonyer's home or in his direct care" when they were taken.

The district court rejected these arguments.  It concluded that Gonyer's conduct with TT beginning when the boy was fifteen, including the sexual abuse, was a part of the "grooming" process that persuaded or induced TT to take the photos, warranting enhancements under §§ 2G2.1(b)(1)(B) and 2G2.1(b)(2)(A).  The court further noted that Gonyer was effectively TT's supervisor at the farm, which was the location where the acts of abuse occurred (and where one of the pictures was taken), warranting, in the court's view, application of § 2G2.1(b)(5).  The result of these and other

---

[2]Gonyer was sentenced under the 2012 version of the Sentencing Guidelines, the version in effect at the time of sentencing.  See United States v. Acosta-Colón, 741 F.3d 179, 192 n.7 (1st Cir. 2013).  Unless otherwise noted, all citations in this order are to that version of the Guidelines.

sentencing enhancements not questioned here was a total offense level of 43, which, when coupled with Gonyer's criminal history category of III, yielded an advisory Guidelines sentence of life imprisonment.  Using this as its starting point, the court imposed the prosecution's recommended sentence of 420 months' imprisonment.

## II.  THE CONVICTION

In contesting his conviction, Gonyer raises a single challenge, asserting that the district court erred by permitting TT to testify to Gonyer's sexual abuse under Federal Rules of Evidence 404(b) and 403.  The familiar language of Rule 404(b)(1) prohibits the use of a person's other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  In other words, as this court has previously explained, the rule prohibits the prosecution from introducing "evidence that is extrinsic to the crime charged" solely "for the purpose of showing villainous propensity."  United States v. Roszkowski, 700 F.3d 50, 56 (1st Cir. 2012).  Rule 404(b)(2) nonetheless permits such evidence to be used if it has special relevance, that is, if it is relevant "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Even if evidence of prior acts has such special relevance, however, that is not the end of the inquiry; the evidence may still be excluded "if its probative value is substantially outweighed by a

danger of . . . unfair prejudice." Fed. R. Evid. 403. Gonyer attacks both the district court's conclusion that evidence of his prior sexual abuse of TT had special relevance and the court's determination that the danger of unfair prejudice from that evidence did not substantially outweigh its probative value.

Before proceeding to the merits of Gonyer's arguments, we pause to address a threshold issue concerning the standard to employ when reviewing the district court's evidentiary rulings. Gonyer acknowledges that historically, this court has reviewed the admission of prior bad acts evidence under Rules 404(b) and 403 for abuse of discretion. See, e.g., United States v. Doe, 741 F.3d 217, 229 (1st Cir. 2013). He argues, however, that in so doing, we are "in the minority," and urges us to reconsider our position and to apply the multi-tiered standard of review espoused in United States v. Clay, 667 F.3d 689 (6th Cir. 2012). As the Court of Appeals for the Sixth Circuit explained in that case, its three-step approach involves an initial, clear-error review of the district court's determination that "other acts" took place; a de novo review of the determination that the acts had special relevance under Rule 404(b); and, finally, abuse-of-discretion review of the determination that the evidence's probative value outweighs its unfairly prejudicial impact. See id. at 693.

The proposition that this panel would be free to adopt Clay's approach if so inclined is a doubtful one, at best. It is

-8-

well settled that a newly-constituted panel of this court may not depart from the precedent established by prior panel decisions absent some compelling reason, usually an intervening decision of the Supreme Court or an en banc sitting of this court. See United States v. Troy, 618 F.3d 27, 35-36 (1st Cir. 2010). Gonyer has identified no such reason.

Even if he had done so, moreover, Gonyer did not contest the special relevance of evidence regarding the sexual abuse before the district court. Rather, as discussed in the preceding section, he in fact conceded that such evidence was potentially relevant under Rule 404(b), and instead chose to argue that it was unduly prejudicial and should thus be excluded under Rule 403. Gonyer's claim that the district court erred in concluding that the evidence had special relevance is, at a minimum, forfeited, so that we review the district court's determination of the evidence's relevance under Rule 404(b)(2) only for plain error, see Puckett v. United States, 556 U.S. 129, 134-35 (2009); United States v. Reed, 977 F.2d 14, 17 (1st Cir. 1992), while still reviewing its Rule 403 determination for abuse of discretion. We find neither.

We turn first to the Rule 404(b)(2) determination. Under the circumstances presented in this case, TT's testimony about his abuse at Gonyer's hands plainly had special relevance apart from establishing Gonyer's propensity to commit sexual crimes against minors. We have previously remarked that evidence should "not be

examined in isolation, but in its particular factual setting," and that, under Rule 404(b), "[e]vidence of prior conduct is admissible 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" United States v. D'Alora, 585 F.2d 16, 20 (1st Cir. 1978) (quoting 2 Weinstein's Evidence § 404(09), at 404-57 (1975)); see also United States v. Dworken, 855 F.2d 12, 27 (1st Cir. 1988) ("Evidence of other criminal acts is admissible when it is so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof.") (quotation marks and alterations omitted; emphasis in original). That holding applies here, where the prior acts of abuse and the charged conduct involved the same victim and same perpetrator, and occurred within more or less the same period of time. Evidence of the abuse provided critical context about Gonyer's relationship with TT.

By far the most critical aspect of that context is that it establishes Gonyer's motive for the charged offenses. Gonyer suggests that the prosecution could have made its case against him without evidence that he sexually abused TT. Maybe so. But had the prosecution not introduced that evidence, the jury would have been presented with an incomplete picture of why Gonyer would ask TT to take and send pornographic photographs, and, for that matter, why TT would acquiesce to such a request. TT's testimony regarding

the abuse provided the answers: Gonyer was sexually attracted to TT, as evidenced by his prior sexual abuse of the child, and, due to that abusive relationship, TT was predisposed to honoring such a request. Along the same lines, TT's testimony regarding the abuse also served to dispel any suggestion that TT took explicit photographs of his own initiative and sent them to Gonyer's phone without having been solicited to do so. In this fashion, evidence of the abuse helped establish that Gonyer's possession of the photographs was not a matter of mistake or accident on his part (as the district court specifically noted).

Although Gonyer argues otherwise, the use of the evidence for those purposes is not equivalent to using it to show that he was predisposed to committing sexual acts involving minors. Rather, it served to avoid creating the inaccurate impression that, prior to the time of the offenses, Gonyer and TT had been nothing more than coworkers and friends. We find no error, plain or otherwise, in the district court's determination that evidence of Gonyer's abuse of TT had special relevance.[3]

---

[3]For reasons elucidated in Parts III.A and III.B, infra, it may have been possible for the district court to conclude that Gonyer's abuse of TT was part of the process of inducement, coercion, or persuasion that formed the basis of the sexual exploitation charges against Gonyer, making a Rule 404(b)(2) analysis unnecessary. Because, however, the district court, prompted by Gonyer's concession that evidence of the abuse was potentially relevant under Rule 404(b)(2), analyzed the evidence under that rule, and because its determination was not erroneous for the reasons just discussed, we need not travel any further down this road, and simply note the issue as a potential alternative

Nor can we conclude that the district court abused its discretion in determining that the danger of unfair prejudice from the evidence did not outweigh its probative value. A district court's "weighing of the positive and negative effects of specific evidence demands considerable respect, especially when, as in this case, limiting instructions were deftly and timely deployed." United States v. Ladd, 885 F.2d 954, 959 (1st Cir. 1989). It is only in rare and "extraordinarily compelling circumstances" that we will, "from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weight of probative value and unfair effect." Id. The probative value of the evidence was high; as noted, it provided necessary context that helped explain the relationship between Gonyer and TT, established their motives for acting as they did, and undermined the possible inference that Gonyer's possession of the offending images was the result of happenstance, accident, or mistake. "Even grisly evidence--including evidence of homicides--has been admitted" because it possessed such "contextual significance." Id. (citing Real v. Hogan, 828 F.2d 58, 61 (1st Cir. 1987); United States v. Moreno-Morales, 815 F.2d 725, 740 (1st Cir. 1987)).

---

basis upon which we could affirm the district court's order. See United States v. Shinderman, 515 F.3d 5, 12 (1st Cir. 2008) (this court may affirm the district court's order "on any independent ground made manifest by the record").

It is undoubtedly true that evidence of Gonyer's sexual abuse of TT could have produced emotional reactions in some members of the jury. But "Rule 403 does not ensure that trials--even criminal trials--will be antiseptic affairs." United States v. Mehanna, 735 F.3d 32, 64 (1st Cir. 2013). The district court took pains to negate the danger that the jury would use the evidence for improper purposes, giving a powerful limiting instruction that thrice admonished the jury that it should not use evidence of Gonyer's prior acts of sexual abuse against TT to infer that he had also committed the acts for which he was on trial--an instruction we presume the jury followed. See United States v. Bucci, 525 F.3d 116, 127 (1st Cir. 2008). And throughout the trial, the district court was sensitive to the danger of unfair prejudice, and acted with care to ensure that the jury would not be exposed to material that could taint its verdict. Among other things, the court forbade the prosecution from presenting evidence of accusations of sexual abuse that other minors had leveled against Gonyer (including an occasion on which Gonyer allegedly urged another minor to take photographs of his own buttocks and send them to Gonyer), citing Rules 403 and 404(b) as the basis for its rulings. We see no reason to believe, on this record, that the district court abused its discretion in ruling that the unfairly prejudicial effect of TT's testimony about Gonyer's abuse did not substantially outweigh its probative value.

-13-

### III. THE SENTENCE

Again, the district court applied three two-level enhancements to U.S.S.G. § 2G2.1(b)'s base offense level of 32 for sexual exploitation of a child--one two-level enhancement for TT's age, another for the inclusion of a sexual act or contact in the offense, and a third for Gonyer's supervisory control over TT. Gonyer contends that the district court erred in applying each of these enhancements. We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its underlying factual findings for clear error. See, e.g., United States v. Batchu, 724 F.3d 1, 7 (1st Cir. 2013). For the reasons discussed below, we find no error in the district court's application of any of the three enhancements.

### A. Age of the Victim

Guidelines section 2G2.1(b)(1)(B) provides for a two-level enhancement "[i]f the offense involved a minor who had . . . attained the age of twelve years but not attained the age of sixteen years." The district court acknowledged that TT was sixteen years old when he took the photographs that prompted the charges against Gonyer. The court noted, however, that to prove the charges of sexual exploitation of which Gonyer was convicted, the prosecution was required to show that Gonyer employed, used, persuaded, induced, enticed, or coerced TT to engage in the sexually explicit conduct depicted in the photographs, see 18

-14-

U.S.C. § 2251(a), and concluded that the "process of enticement" took place "over the year preceding the time that the photographs were taken," beginning when TT was fifteen years old.  The court then explained that it would apply the age-of-the-victim enhancement "[b]ased on [its] analysis of the statute."

On appeal, the parties have bid adieu to the district court's reasoning.  Whereas, as just discussed, the district court appears to have relied primarily upon the notion that Gonyer's conduct with TT when the boy was fifteen was part and parcel of the offense of conviction as defined by the statute, Gonyer proceeds upon the assumption that the court's application of the age-of-the-victim enhancement depended upon a conclusion that this conduct was "relevant conduct" within the meaning of U.S.S.G. § 1B1.3(a)(1)(A), which permits a sentencing court to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" when determining specific offense characteristics.  The government takes the bait and runs with it, seeking to defend that conclusion.  We are not inclined to follow suit.

As just noted, in choosing to apply this enhancement, the district court quoted the language of 18 U.S.C. § 2251(a), which,

in relevant part, provides for the punishment of "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." It continued:

> [T]he trial evidence is that the defendant befriended the victim when he was 15, bought him cigarettes, sneakers, a jacket, made trips . . . to shop with him, showed him pornographic movies, and spent about a year grooming the victim, during which time he was sexually abusing him before the photographs were taken.
>
> There's no question, from my perspective, based on the testimony I heard, that the defendant viewed his gifts as a quid pro quo for sex from the [victim]. According to the victim's testimony, in the defendant's own very crude words, he told the victim, when he bought him a BB gun, that he would take it out [on] his ass. The defendant's attempt to isolate the taking of the photographs from the one-year-old-plus relationship is unrealistic, from my perspective, and also <u>contrary to the statute</u>.
>
> The victim here testified that it was the defendant who told him to take the photographs of his genitals, and the victim did so at his request. And turning this around in a different way, let's just assume . . . that the defendant had approached a 16-year-old boy without any relationship with that boy and demanded that that boy go into another room or text him and tell him to take a picture of his genitals. That simply wouldn't happen. So to take the photo -- the act of photography, the demand, and the photograph and the sending of the photographs as the crime, I don't think is consistent with the -- a realistic understanding of what happened here.
>
> Further, the determination that he was 15 when, in part, this -- when this crime began

-16-

> depends on –– or is consistent with the jury finding that the defendant, quote, employed, used persuaded, induced, or enticed –– enticed or coerced the victim. <u>This process of persuasion began in the summer before the photographs were taken. That's the charge. The charge is that the defendant persuaded or induced or enticed the victim in this case to produce the images. That process of enticement, what is sometimes referred to as grooming, is something that had taken place over the year preceding the time that the photographs were taken</u>.

The emphasized portions of the district court's remarks make clear that the court's analysis relied upon the language of the statute, and that the court viewed the pre-photograph conduct as part of the offense of conviction itself. To be sure, after making these remarks, the district court then briefly mentioned § 1B1.3, the "relevant conduct" guideline, and cited an Eleventh Circuit case that reached a similar conclusion based in part on its application of § 1B1.3. See <u>United States</u> v. <u>Holt</u>, 408 F. Appx. 229, 238 (11th Cir. 2010). Viewing the district court's references to § 1B1.3 in context, though, we are unable to view those references as anything more than an alternative justification for the court's application of the age-of-the-victim enhancement. Indeed, after referring to § 1B1.3, the district court concluded its discussion of the age-of-the-victim enhancement by stating that it would apply the enhancement "[b]ased on [its] analysis <u>of the statute</u>" and "the facts in the case" (emphasis added). And, when the court subsequently issued written post-hearing "Findings

-17-

Affecting Sentencing" that cited provisions of the Guidelines pervasively, those findings did not so much as mention, let alone discuss, § 1B1.3.

While it is an oft-repeated maxim that we are "not wedded to the lower court's rationale," Shinderman, 515 F.3d at 12, neither should we ignore that rationale simply because the parties have chosen to do so. We find it unnecessary to explore the precise contours of what qualifies as "relevant conduct" under § 1B1.3, and affirm the district court's application of the age-of-the-victim enhancement based upon its conclusion, just detailed, that Gonyer's conduct with TT when the boy was fifteen was part of the offense of conviction defined by the statute.[4]

We turn to Gonyer's arguments, which, though they are directed at the district court's alternative "relevant conduct" rationale, still have some applicability to the court's primary "offense of conviction" rationale. Gonyer argues that in order for § 2G2.1(b)(1)(B) to apply to a defendant convicted of sexually exploiting a child, the minor must be between the ages of twelve and fifteen at the time a visual depiction of the minor engaging in sexually explicit conduct is produced. In other words, as Gonyer

_____

[4]By failing to address the district court's primary holding, Gonyer has arguably waived any challenge to that holding. See United States v. Fuchs, 635 F.3d 929, 933-34 (7th Cir. 2011). By the same token, though, the government has arguably "waived Gonyer's waiver" by declining to defend that holding, see id., so we address the substance of the district court's holding, and do not rely on this procedural shortcoming to affirm.

puts it in his brief, he takes the position that the enhancement is "a black or white question: Either the sexually explicit image involved a minor under the age of 16 or it did not." We do not agree with this interpretation, and are aware of no binding authority to support it.

Gonyer's position results from a misunderstanding of the variant of the offense of sexual exploitation of a minor of which he was convicted, as defined by § 2251(a). The statute does not simply criminalize the production of sexually explicit images of a minor. Rather, as the district court noted, the statute prohibits "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing]" a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. 18 U.S.C. § 2251(a). Indeed, to violate this section, it is not necessary that a visual depiction of the minor engaging in sexually explicit conduct actually results from the defendant's actions (only that the defendant intended that result). See United States v. Smith, 795 F.2d 841, 846 (9th Cir. 1986). It follows that the age of the minor at the time an image (if any) is produced is not of controlling relevance in deciding whether § 2G2.1(b)(1)(B) applies.

That, of course, begs the question: what is relevant to this determination? Although Gonyer himself has not done so, one might argue that because the offense is not fully realized until the minor has engaged in sexually explicit conduct, the minor's age

at the time of that conduct should control. But the minor engaging in sexually explicit conduct is only one element of the offense. For the defendant to be convicted, it is also necessary for the prosecution to establish that the defendant caused the minor to engage in that conduct. The acts with which the defendant caused the minor to engage in sexually explicit conduct--whether they consist of persuasion, inducement, enticement, coercion, or some other thing--are as integral a part of the offense as the conduct itself, so long as the defendant engaged in those acts with the purpose of producing a visual depiction of the conduct. When deciding whether the "offense involved" a minor of a certain age, then, a sentencing court is justified in taking into account the minor's age at the time of those enticing or coercive acts.

The district court in this case did just that, and found that TT was under the age of sixteen at the time Gonyer began the process of persuading, enticing, or coercing him to engage in sexually explicit conduct for the purpose of producing a visual image thereof. In reaching this conclusion, the district court cited evidence that Gonyer showed TT pornography when TT was only fifteen, took him to a nearby city, bought numerous gifts for him (including a DVD of adult pornography), and allowed him to smoke (which his parents had forbidden), all actions that ingratiated Gonyer with TT and reduced TT's resistance to Gonyer's overtures. Gonyer challenges the court's reliance on this evidence, arguing

that "there is no indication" that this conduct "was intended as preparation for the future photographs," as opposed to his sexual abuse.  We again disagree.

Gonyer's "grooming" conduct was undoubtedly intended, in some part--perhaps even in principal part--to persuade TT to engage in sexual acts with Gonyer.  That does not preclude a conclusion that the same conduct was undertaken with the additional purpose of producing sexually explicit images of the boy.  As the Court of Appeals for the Second Circuit has remarked, "[t]he criminal law applies to everyone, not just the single-minded." United States v. Sirois, 87 F.3d 34, 39 (2d Cir. 1996).  In that case, the court observed that "a person who transports children across state lines both to engage in sexual intercourse with them and to photograph that activity is no less a child pornographer simply because he is also a pedophile." Id.  We could say the same of a person who grooms a child both to engage in sexual acts with him and to pose for sexually explicit photographs.

There was ample evidence to support the district court's determination that at least one of the specific purposes of Gonyer's conduct with TT when the boy was fifteen was to persuade him to produce sexually explicit photos.  Most significantly, the district court heard evidence that, prior to meeting TT, Gonyer had approached at least one other child with whom he worked and asked to take sexual photographs of that child, that Gonyer claimed to

-21-

have had produced images of himself sexually abusing another child with whom he worked, and that Gonyer had in his possession images of the sexual abuse of another local child.  In addition, only a few years before meeting TT, Gonyer had been convicted of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)--a fact of which the district judge was well aware, since he had also presided over the proceedings in that case. Given Gonyer's past interest in pornographic images of minors, and his previous attempts to obtain sexual images of underage co-workers, it was not unreasonable for the district court to draw the conclusion that Gonyer's beneficence to TT was, from the very beginning, undertaken with the goal of persuading or enticing TT to produce such images.[5]  Although the court could well have concluded that these acts were not undertaken for that purpose, it did not commit clear error in reaching the opposite conclusion.

We do not mean to suggest that a district court is justified in viewing every kindness a defendant does for his victim as part of a process of persuasion leading up to the consummation of the offense.  As discussed, a conviction for the crime of sexual exploitation of a minor requires that the defendant's acts of

---

[5]We note as well that Gonyer and TT began exchanging text messages, including sexually explicit text messages, when the boy was still fifteen.  That Gonyer later prevailed upon TT to take and send him sexually explicit photographs through the same medium cannot easily be divorced from the prior history of communications between the two.

-22-

persuasion, enticement, or coercion were undertaken with an aim toward producing a depiction of a minor engaging in sexually explicit conduct. Under the facts of this case, the district court's conclusion that Gonyer had such a purpose when he began to "groom" TT, such that his offenses began when TT had "attained the age of twelve years but not attained the age of sixteen years," was not an impermissible view of the evidence. The district court did not err in imposing a two-level enhancement under § 2G2.1(b)(1)(B).

## B. Sexual Act or Contact

Guidelines section 2G2.1(b)(2)(A) calls for a two-level enhancement if "the offense involved . . . the commission of a sexual act or sexual contact." The district court acknowledged that the photographs that led to the charges against Gonyer did not depict any sexual act or contact. It nonetheless found that, as with Gonyer's conduct with TT in general when the boy was fifteen, Gonyer's sexual abuse of TT was part of the course of "grooming" conduct that led up to TT engaging in the sexually explicit conduct depicted in the photographs, and applied the § 2G2.1(b)(2)(A) enhancement on that basis.[6]

---

[6]The parties have again characterized the district court's application of this enhancement as dependent upon U.S.S.G. § 1B1.3, the "relevant conduct" guideline. Again, though, the district court's comments at the sentencing hearing made clear that it was relying principally on the offense as defined by the statute. The court explained that it viewed "the taking of the photographs as being interwoven with this history of sexual abuse and the history of persuasion and enticement that the defendant engaged in over the year up to the time that the photographs were taken" such that the

In challenging the application of this enhancement, Gonyer again makes the mistake of viewing the offense too narrowly. Focusing on the photographs that TT took at Gonyer's request, he argues that because his sexual abuse of TT is not depicted in the photographs, the abuse and photographs "occurred at different times," and "[t]he photos did not depict the same type of sexual misconduct [he] engaged in" with TT, the "sexual act or conduct" enhancement cannot be applied in this case. But, as just discussed, the offense of sexual exploitation of a minor consists of more than creating photographs, and, indeed, need not involve an actual photograph at all. See Smith, 795 F.2d at 846. So, when determining whether the "offense involved" a sexual act or contact, a district court need not look solely at any photographic or other visual images produced as a result of the offense. The court may also consider whether the defendant's acts of "employing, using, persuading, inducing, enticing, or coercing" the minor to engage in sexually explicit conduct for the purpose of producing a depiction of that conduct involved a sexual act or contact.

Gonyer hits closer to the mark in arguing that "there is simply no evidence" that he abused TT "with the intent of preparing

sexual abuse was part of "the offense itself." Because, as we have already explained, see Part III.A, supra, we are unwilling to disregard the district court's stated rationale for its ruling, which focused on the offense conduct under the applicable statutory language, we analyze the issue as the district court itself did--on the basis of the statute, rather than § 1B1.3.

the minor to take the photographs in the charged offense." He notes the lack of direct evidence that he "talked about or requested the photos as part of" the abuse, that TT "took the photos because of" the abuse, or that the abuse was "used as leverage or an enticement to induce the taking of the photos." We are cognizant of these evidentiary lacunae, and, were we asked to determine in the first instance whether Gonyer's sexual abuse of TT was undertaken to persuade or induce TT to engage in sexually explicit conduct on film at a later date, we might well reach a different conclusion than the district court. But we are not encountering this issue in a vacuum; the district court has already spoken on the issue, and our standard of review is a deferential one. When reviewing for clear error, we will reverse only if, "on the whole of the record, we form a strong, unyielding belief that a mistake has been made." United States v. Doe, 741 F.3d 217, 235 (1st Cir. 2013). We harbor no such belief, for substantially the same reasons mentioned in the preceding section.[7] Cf. Holt, 408

---

[7]The government argues that application of the enhancement was appropriate because, "[h]ad there been no prior sexual subjugation, there is no reason to believe TT would have complied with Gonyer's orders to photograph himself." But even if that is true, we do not agree with the proposition that but-for causation between a defendant's prior sexual contact with the minor and the offense of conviction is a sufficient basis upon which to apply § 2G2.1(b)(2)(A). Cf. United States v. Schaefer, 557 F.3d 440, 448 ("[T]he mere fact that there was previous sexual abuse does not prove that the previous abuse was perpetrated in preparation for the subsequent offense of conviction . . . ."), vacated, 573 F.3d 267 (6th Cir. 2009). In the present case, however, the district court's application of the enhancement rested on more than mere

Fed. Appx. at 238 (district court committed no clear error in considering defendant's prior sexual abuse of victim when sentencing him for sexual exploitation of a minor; "it is entirely plausible that [defendant's] inappropriate sexual relationship with [victim] groomed her to participate in [defendant's] production of pornographic images"). We accordingly affirm the district court's application of the § 2G2.1(b)(2)(A) enhancement.

## C. Supervisory Control

Guidelines section 2G2.1(b)(5) provides for a two-level enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." The district court concluded that application of this section was warranted due to the stark 26-year age difference between Gonyer and TT, the fact that Gonyer trained and supervised TT at work, and the fact that TT frequently spent the night at Gonyer's apartment in anticipation of working at the farm early the next morning. Gonyer does not dispute that these factors could create a situation in which TT was in his "custody, care, or supervisory control." Rather, he argues that, these factors notwithstanding, the district court's conclusion was erroneous because he was not actually present when TT engaged in the sexually explicit conduct, and took the photographs, at the center of the

but-for causation, as we have explained.

-26-

charges against him.   Under Gonyer's view, his custody or control of TT at the exact time of that conduct is a prerequisite to § 2G2.1(b)(5)'s application.

For reasons already discussed in Parts III.A and III.B, supra, Gonyer's attempt to limit the scope of his offenses to TT's production of sexually explicit photographs misapprehends the nature of those offenses, which also encompass his actions in persuading, inducing, or coercing TT to engage in the conduct depicted in the photographs.   And, as just noted, Gonyer does not challenge the proposition that TT was in his "custody, care, or supervisory control" during at least some of those actions.   Even if we were to indulge Gonyer's unduly restrictive view of the statute, however, the district court did not err in applying the supervisory-control enhancement because TT was, in fact, in Gonyer's supervisory control at the time of at least one of the photographs in question was taken.

As the Application Notes to § 2G2.1(b)(5) explain, the section was "intended to have broad application" and to include "offenses involving a minor entrusted to the defendant, whether temporarily or permanently."   Among the examples listed in the Notes are "teachers, day care providers, baby-sitters, or other temporary caretakers."   TT's testimony at trial established that he took one of the sexually explicit photographs while working with Gonyer at the farm, where Gonyer was effectively TT's supervisor

-27-

and was often the sole adult in charge of the boy.  Indeed, at the time the photograph was taken, Gonyer was the sole adult in charge of TT, who had been "entrusted to" his care by the farm's owners (to whom, in turn, TT's parents had entrusted the boy).  The position Gonyer occupied was that of a "temporary caretaker," and is readily analogized to the position occupied by a teacher or baby-sitter.  Cf. United States v. Beasley, 688 F.3d 523, 535 (8th Cir. 2012) (enhancement applied to shopkeeper who hosted "overnight lock-ins" with minors where he "was the primary, and maybe the only, adult present" and thus "exercised at least as much 'care, custody, or supervisory control' [as] a teacher, babysitter, or day care provider").

Gonyer points out that though he was with TT immediately before, and immediately after, the photograph was taken, TT actually took the photo in the farmhouse's basement while Gonyer remained outside.  Because TT was "away from" him at the time the photograph was taken, Gonyer asserts, TT could not have been under his control.  This is far too narrow a view of what it means for a minor to be "in the custody, care, or supervisory control" of a person.  Common experience teaches that a caretaker need not occupy the same physical space as his or her charge to have custody or control of that person.  It would scarcely make sense to say, for example, that a parent's custody or control of a child ends when the parent steps outside to check the mailbox, and only resumes

when the parent comes back inside. No one would consider a babysitter's custody or control of a child to end the instant the sitter puts the child to bed and then retreats to another room to wait for the child's parents to return.

That Gonyer was not in the immediate vicinity when TT took the photograph, then, does not preclude the application of § 2G2.1(b)(5), so long as TT was in Gonyer's care, custody, or control when the sexually explicit conduct that formed the basis of the charges took place. He was. The district court did not err in imposing a two-level enhancement under that section.

## IV. CONCLUSION

For the foregoing reasons, Gonyer's conviction and sentence are **affirmed.**