# United States Court of Appeals
## For the First Circuit

No. 18-1966

UNITED STATES OF AMERICA,

Appellee,

v.

MARIO RAFAEL CASTILLO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson and Lipez,
Circuit Judges.*

Alejandra Bird López, Research and Writing Specialist, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.

Antonio L. Pérez-Alonso, Assistant U.S. Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

* Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

November 25, 2020

**THOMPSON**, **Circuit Judge**.    After Mario Rafael Castillo ("Castillo") was indicted on two counts for abusing his two granddaughters, Castillo entered into a plea agreement[1] with the government in which he pled guilty to one count of abusive sexual contact with a child under the age of twelve.    As to the other count of the indictment -- the more serious charge of aggravated sexual abuse of a child under twelve, a charge that carries a mandatory minimum sentence of thirty years' imprisonment -- the government agreed to dismiss it.    But along the way, in sentencing proceedings, the government invoked a cross-reference provision in the Sentencing Guidelines for abusive sexual contact, the application of which resulted in a guideline range fourteen to eighteen years greater than the ordinary range for that offense. Over Castillo's objection, the sentencing court applied the cross-reference provision and sentenced Castillo to a 235-month term of imprisonment.    Castillo says this was error.    And in addition to this procedural-reasonableness argument, Castillo mounts an attack on the substantive reasonableness of the sentence imposed.    After careful review, we vacate and remand for resentencing.

---

[1] That plea agreement contained a waiver of appeal provision -- Castillo agreed to waive his appeal rights if the sentence imposed was 180 months or less.  In view of the 235-month sentence that was ultimately pronounced, the parties agree that the waiver has not been triggered.

## BACKGROUND

Before getting into the issues presented for our review, we provide the factual backdrop, procedural history, and some initial Sentencing Guideline ground rules as they apply in this case.

First, the facts. Castillo's plea agreement contains a "Statement of Facts" providing that Castillo agrees that the facts in the Joint Factual Basis "are accurate in every respect and, had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt." Our own recitation of the facts stems primarily from this joint account.

From August 2011 through August 2014, Castillo lived in Vilseck, Germany, with his son ("W.C.") and his two granddaughters ("FM-1" and "FM-2"). W.C., a member of the United States Army, had brought his daughters overseas, and Castillo joined them as W.C.'s accompanying dependent. During this time, Castillo spent a considerable amount of time at the family home in Germany supervising FM-1 and FM-2, both of whom were under the age of twelve during their time abroad.

Fast forward to March of 2016, after the family had returned home to the United States -- this is when FM-1 and FM-2 told W.C. that Castillo had engaged in inappropriate sexual activity with them while the family was in Germany. W.C., in turn, reported this information to the Army, and the Army's resulting

investigation revealed that Castillo had engaged in inappropriate sexual activity with FM-1 and FM-2 during those three years in Germany. Specifically, the investigation led to the discovery that, while Castillo and his granddaughters were in Germany, the following events transpired:

> [O]n at least one occasion . . . while FM-1, a child under the age of 12, was playing on the bed with her iPad, the defendant pulled her pants and underwear down to her knees and "licked the outside of her parts," meaning her genitalia. On another two occasions, the defendant tried to pull FM-1's pants down again but was unable to because of the tight belts that the girl began to wear after the first incident.
>
> With regard to FM-2, a child under the age of 12, the defendant tried to pull the younger girl's pants down and, at another time, he touched her inner thigh with his hands with an intent to arouse or gratify the sexual desire of the defendant. This conduct also happened while the defendant was an accompanying dependent of [his son] in Germany.

The timeframe with respect to these incidents is unclear; no details beyond those we just recounted are provided as to when these episodes took place within the three-year timeframe that Castillo was in Germany. It is likewise unclear what the proximity of these incidents was to one another.

We can flesh out a bit more of the relevant factual backdrop, though. The uncontested facts in the Probation Office's Presentence Investigation Report (PSR) provide this additional detail about the inner-thigh incident:

FM-2 stated while in Germany she was in defendant's room lying on her stomach on his bed when he leaned over her and placed his hand on her buttocks. FM-2 stated she sat up and the defendant started rubbing her inner thigh and she said it felt like he was trying to touch her private parts. She stated she told him to stop and avoided being around him after that.

In time, Castillo was indicted, then charged on two counts: Count One, "knowingly engag[ing] in a sexual act, to wit: contact between the mouth and the vulva, with another person, to wit: [FM-1] who had not attained the age of 12 years," a violation of 18 U.S.C. § 2241(c), the aggravated sexual abuse statute; and Count Two, "knowingly engag[ing] in or caus[ing] sexual contact, to wit: the intentional touching of the inner thigh, with another person, to wit: [FM-2], who had not attained the age of 12 years, with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of another person," a violation of 18 U.S.C. § 2244(a)(5), the abusive sexual contact statute.

After that, Castillo entered into a plea agreement in which he pled guilty to Count Two, and the government dismissed Count One.[2] Thereafter, the parties embarked upon their jockeying for what was, to the thinking of each, the most appropriate and legally sound sentence.

---

[2] Count One carried a thirty-year mandatory minimum sentence, § 2241(c), while Count Two directed a sentence of "any term of years or for life," § 2244(a)(5).

It is at this point that the complicated Sentencing Guidelines rear their head as the basis for the primary dispute in this case. As such, we now provide some Guidelines ins and outs as they relate to what happened here procedurally.

The Sentencing Guideline that applies to Castillo's offense of conviction (abusive sexual contact, recall) is § 2A3.4, and § 2A3.4 includes a so-called cross-reference provision, which instructs: "If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)." U.S. Sentencing Guidelines Manual § 2A3.4(c)(1) (U.S. Sentencing Comm'n 2018) ("USSG").[3] Essentially, application of the cross-reference taps into another guideline and another level of conduct, which has the effect of upping the ante on any resulting sentence.

Now consider Castillo's sentencing proceedings. Castillo's plea agreement included two separate Guidelines calculations -- one proposed by the government, and one proposed

---

[3] And the Guidelines Manual defines "offense" in commentary to § 1B1.1 -- a section that sets out general application principles -- as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." USSG § 1B1.1 n.1(H). Much more on this and how it all comes together in a bit. For now, the cross-reference's existence and the fact that the parties vigorously contest whether it should or should not have come into play is the only context you need.

by the defense -- and the point of divergence between those two proposals is the applicability of the cross-reference provision. The government's proposed calculation used § 2A3.4 as a starting point, then applied the cross-reference provision. The defense's proposed calculation, on the other hand, did not apply the cross-reference. The resulting differential in proposed sentences was stark: the government's calculation resulted in a total offense level of 38, while the defense's calculation resulted in a total offense level of 26. This big gap largely owes to the difference in base offense level -- basically, while both parties used Guideline calculations that applied the same enhancements and a three-point reduction for acceptance of responsibility, the base offense level ended up rising considerably upon the government's introduction of the cross-reference provision. When § 2A3.4 is applied without the cross-reference, as the defense said should be the construct, the base offense level begins at 12, but is increased to 22 because the victim "had not attained the age of 12 years," § 2A3.4(b)(1); when the cross-reference in subsection (c) was applied, as the government urged should be the case, the base offense level jumped to 30.

Ultimately, the PSR advised the same approach as the government did in the plea agreement (total offense level = 38), its recommendation guided by the application of the cross-reference provision.

And so, heading before the sentencing judge, the battle lines were drawn. Castillo lodged an "informal objection[]" to the PSR, with Probation noting in its addendum to the PSR that "[d]efense object[ed] to the use of . . . the USSG § 2A3.4(c)(1) cross reference," then Castillo submitted a formal objection when Probation refused to change the guideline calculation. In his formal objection, Castillo took aim at the government's assertion that his "admission in the plea agreement that on a separate occasion he tried to pull the younger granddaughter's [(FM-2's)] pants down is clear evidence that he attempted to do the same sexual act that he had done to the older granddaughter." Castillo elaborated, explaining that "the facts and circumstances of this case do not support the application of the cross-reference" because, in his estimation, the government had failed to show by a preponderance of the evidence that he had the necessary intent to commit a sexual act or that he had taken a substantial step towards doing so.

Furthermore, Castillo argued that the government -- tellingly, he says -- had switched up its rationale in support of the cross-reference's application, writing:

> Both the government and the probation officer originally assumed that the cross-reference applied because Mr. Castillo admitted to conduct directed at FM-1, the older granddaughter, that met the definition of aggravated sexual abuse. When the undersigned pointed out in a first set of objections [to the PSR] that the relevant conduct rules did not allow for this application of the

cross reference in relation to conduct outside of the count of conviction, the government changed its argument, and the probation officer accepted the new interpretation. According to the government and the probation officer, the cross-reference now applies because Mr. Castillo allegedly attempted to commit criminal sexual abuse against the younger granddaughter, the victim in the count of conviction.

The sentencing judge heard argument on Castillo's objection to the application of the cross-reference provision in the PSR. In the course of that argument, Castillo revisited what he'd set out in his objections, highlighting in particular that the government couldn't demonstrate that Castillo had the requisite intent -- the only conduct for which Castillo had been convicted was touching FM-2's inner thigh, and that, on its own, is not indicative of an attempt to commit a sexual act:

> [O]ne of the things that I stress in my objections is that the conduct directed at FM-2, female minor number two, in fact, was touching of the inner thigh, which is something that does not meet the definition of a sexual act. Only sexual contact. And so, without more, I think the Government is unable to prove the intent part.[4]

In response, the government posited that it was clear that Castillo was trying to commit a sexual act, and the sentencing judge could infer intent in view of Castillo's other conduct -- towards both FM-1 and FM-2 -- including trying to pull FM-2's pants down:

---

[4] Castillo also pushed for a more lenient sentence due to his advanced age (69) and the fact that a longer sentence would increase his likelihood of dying in prison.

> [W]hen we read that "tried to pull the girl's pants down"
> with no other information, it's a harder argument to
> make for the Government, that he had an intent to do
> something that was a criminal sexual act. But when you
> read it, directly after he says, well, when he tried the
> same thing with victim one, and he was successful in
> getting that child's pants down and off her, and her
> underwear down to her knees, what did he do? What he
> did is he licked her genitalia, and that's absolutely a
> sexual act.

According to the government, those other acts are plenty to show intent, and so the cross-reference should apply.

The sentencing judge agreed with the government, and therefore adopted the Guideline calculation from the PSR -- i.e., he applied the cross-reference -- which created a sentencing range from 235 to 293 months' imprisonment for Castillo. In so doing, most noteworthy for our purposes, the sentencing judge borrowed the government's reasoning regarding intent:

> Mr. Castillo attempted to pull down the pants of one of
> the granddaughter[s] mentioned in the count of
> conviction, and the Court finds that it can be reasonably
> inferred that his intention was to commit a sexual act,
> particularly considering his acts against his other
> granddaughter.

The sentence handed down was 235 months' imprisonment.

Castillo objected as to the application of the cross-reference, and while he was at it, he also objected to what he saw as the substantive unreasonableness of the sentence imposed. This timely appeal followed.

- 11 -

**DISCUSSION**

This background in place, we turn to a closer examination of the lay of the land in this particular sentencing context, including a more specific rundown of the cross-reference provision and how it and other principles come together to guide our analysis. After that, we'll tackle the applicable standard of review, followed by our take on the parties' arguments.

### Primer on the Statutes and Guidelines Provisions at Issue Here

As is clear by this point, this appeal involves multiple interlinked statutes and Guideline provisions -- indeed, the crux of the issue before us involves the applicability of a cross-reference of one Guideline from another. Accordingly, a detailed look at how these pieces fit together in Castillo's case is necessary.

Castillo's offense of conviction and the applicable statute of conviction provide the foundation on which everything else is stacked. Here, Castillo pled guilty to abusive sexual contact with a child under twelve under 18 U.S.C. § 2244(a)(5), which prohibits knowingly engaging in or causing sexual contact with another person if doing so "would violate . . . subsection (c) of section 2241 of this title had the sexual contact been a

sexual act."[5]   Prodded by that, we turn to § 2241(c), which prohibits "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years" when "in the special maritime and territorial jurisdiction of the United States." Reading all this together, then, the statute of conviction prohibits knowingly engaging in sexual contact with another person who has not attained the age of twelve.

Next, the operative Sentencing Guidelines must be considered.  As we previewed a few pages back, the Guideline that applies to Castillo's offense of conviction -- abusive sexual

---

[5] 18 U.S.C. § 2246(2) and (3) define "sexual act" and "sexual contact" in pertinent part as follows:

**(2)** the term "sexual act" means--

. . .

**(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

. . .

**(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

**(3)** the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

- 13 -

contact -- is § 2A3.4.  And we already provided the 50,000-foot view of the fact that § 2A3.4 includes a cross-reference provision: "If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)."  USSG § 2A3.4(c)(1).

So, what was the "offense" here?  The Guidelines Manual defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  USSG § 1B1.1 n.1(I).  Section 1B1.3, titled "Relevant Conduct," provides that "cross references in Chapter Two," like the one hotly contested in Castillo's case,

> shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B1.3(a)(1)(A).

Ultimately, here's how all of that comes together with respect to the applicability of the cross-reference:  the cross-reference should apply if the offense of conviction or any "relevant conduct" (meaning, as it pertains to Castillo's case, "acts committed . . . during the commission of the offense of

- 14 -

conviction," USSG § 1B1.3(a)(1)(A)), involved an attempt to commit sexual abuse.

## Our Take

"We analyze preserved objections to a sentence's procedural and substantive reasonableness under the deferential abuse-of-discretion standard." United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020) (citing United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020)). This standard is "multifaceted": we review issues of law -- like the district court's interpretation and application of the Sentencing Guidelines -- de novo, and we study findings of fact for clear error. United States v. Maisonet-González, 785 F.3d 757, 762 (1st Cir. 2015) (quoting United States v. Trinidad–Acosta, 773 F.3d 298, 309 (1st Cir. 2014); id. at 763 (citing United States v. Batchu, 724 F.3d 1, 7 (1st Cir. 2013)). When a defendant fails to preserve a claim of error, however, we review for plain error. United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). And from there, we "organize our thoughts as follows:  first we see if 'the sentence is procedurally reasonable (that is, free from non-harmless procedural error)' and then we see if 'it is substantively reasonable.'"  Dávila-Bonilla, 968 F.3d at 9 (quoting United States v. Nuñez, 840 F.3d 1, 4 (1st Cir. 2016)).

This brings us to our first analytical hurdle. The government contends that, while Castillo did object to the

sentencing court's use of the cross-reference on the basis that there was insufficient evidence that Castillo's attempt to pull FM-2's pants down constituted an attempted sexual abuse, he did not object to the sentencing court's consideration of this conduct "based on it not being part of the offense of conviction or relevant conduct." Therefore, says the government, because Castillo failed to make the same argument before the sentencing court that he now advances to us on appeal, that angle of argument is not preserved for our consideration, or at least must undergo stringent plain-error review in the event we do reach it.

As we've explained, successful preservation of a claim of error for our consideration on appeal requires that a party object with sufficient specificity such that the district court is aware of the claimed error. See, e.g., United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 6 (1st Cir. 2019) (cautioning that "[t]o preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error") (citing United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)). Upon careful review, we conclude that the government is asking for a level of specificity of objection we have never required when it comes to objecting to the procedural reasonableness of a sentence. See, e.g., United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (citing Soto-Soto, 855 F.3d at 448 n.1)) (explaining that "a defendant's

objection need not be framed with exquisite precision," and considering preserved an objection that referred to the sentence as "excessive" when, according to the appellant, the sentencing court "had not articulated any cognizable grounds" for it).  The record here demonstrates that Castillo flagged the claimed error -- the misapplication of the cross-reference provision -- at several junctures:  he did so in both his informal and formal objections to the PSR, and again at the outset of the sentencing hearing and the end of the hearing.  And then, after the sentencing judge pronounced sentence, Castillo's attorney stated:

> [I]f you allow me briefly to place my objections on the record as to the sentence imposed, procedurally, the obvious ground that we would advance is the fact that the -- that our objections were overruled.  The Court followed the PSR.  And so we understand that is a procedural error.

By our reading, the objection Castillo lodged in response to the PSR was his objection to the application of the cross-reference, and that was the only objection discussed during the sentencing hearing.  Putting two and two together, it is clear that Castillo was specifically objecting to the sentencing judge's application of the cross-reference, calling the sentencing judge's attention to Castillo's position that, as a matter of law, the Guidelines were being misapplied.  This was not, as the government suggests, a generic objection to the procedural unreasonableness of the sentence.  See Hassan-Saleh-Mohamad, 930 F.3d at 6; cf. United

- 17 -

States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019) (deploying plain-error review because the at-issue "objection was wholly generic [(the objection was simply that the imposed sentence was procedurally unreasonable)] and made no mention of the discrete claims of procedural error" such that the sentencing judge would have understood at what, exactly, the objection took aim).

Having so concluded, we proceed using the abuse-of-discretion lens.

As much discussed by now, the cross-reference dispute is the crux of the issue before us. Based on our breakdown above, we know the cross-reference properly can be utilized if the offense of conviction or any "relevant conduct" -- meaning, as applicable in Castillo's case, acts committed "during the commission of the offense of conviction" -- involved sexual abuse or an attempt to commit sexual abuse. USSG § 1B1.3. We'll soon tackle pinning down the meaning of these important buzzwords and phrases (offense of conviction, relevant conduct, etc.) and what they mean specific to Castillo's case. But first, with this overarching query framing the appeal all teed up, we turn to the specifics of the parties' arguments.

As it turns out, the universe of arguments ripe for our consideration is a bit narrower than the government would like. The government insists that the cross-reference properly was applied either because: (1) Castillo's attempt to pull down FM-

2's pants is either part of the offense of conviction or "relevant conduct" that the court was permitted to consider under § 1B1.3, and that conduct constitutes an attempt to commit sexual abuse; or, in the alternative, (2) Castillo's sexual abuse of FM-1 is relevant conduct that the sentencing judge was permitted to consider under USSG § 1B1.3, and that conduct constitutes sexual abuse. But immediately, we have a problem: before the sentencing judge, the government pursued only argument (1) -- that Castillo pulling FM-2's pants down demonstrates an intent to commit sexual abuse when considered in view of Castillo's similar approach with FM-1, i.e., the sexual abuse of FM-1 he committed right after he pulled her pants down. In fact, the government had originally floated argument (2) in the early stages of the sentencing grappling, but abandoned it after it was met with objection by Castillo, who argued that relevant conduct legal principles did not contemplate application of the cross-reference relative to conduct outside the count of conviction. After that objection, by our lights, a new argument (argument (1)) was marshalled in by the government and adopted by the PSR, and argument (2) was not pursued again by the government -- neither in sentencing memos nor at the sentencing hearing. Therefore, discarded early on by the government below, argument (2) is not a viable argument the government can now make on appeal. See, e.g., United States v. Chisholm, 940 F.3d 119, 132 (1st Cir. 2019), cert. denied, 140 S.

- 19 -

Ct. 1224 (2020) (observing that "the Federal Reporter is full of our opinions saying that '[a party] cannot change horses in mid-stream, arguing one theory below and a quite different theory on appeal'" (quoting Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010))).

And so we continue, focusing on argument (1) as pressed by the government in its efforts to rebut Castillo's appellate contentions.

As we do, we are mindful that our above scrutiny of the applicable Sentencing Guidelines provisions taught us that the contested cross-reference is triggered if the offense of conviction or any "relevant conduct" -- meaning, in this case, acts committed "during the commission of the offense of conviction" -- involved sexual abuse or an attempt to commit sexual abuse. For our purposes, then, we first need to figure out the scope of the offense of conviction, then determine whether any of the acts to which Castillo admitted constitute relevant conduct, and, using those conclusions, sort out whether the offense involved sexual abuse or an attempt to commit criminal sexual abuse.

And so, we turn now to the parties' contentions, beginning with the offense of conviction. Castillo tells us that his attempt to pull down FM-2's pants is not part of the offense of conviction, and that's because it occurred on a separate occasion from the touching of FM-2's inner thigh. Castillo goes

on to posit that the sentencing judge should have considered only whether the touching of the inner thigh was an attempt to commit sexual abuse, and, because the sentencing judge went beyond that and applied the cross-reference on the basis that the attempt to pull down FM-2's pants constituted attempted sexual abuse, the sentencing judge committed error. What's more, says Castillo, is that even if the sentencing judge properly could have considered Castillo's other conduct, there is still no record evidence to support a finding that Castillo intended to commit sexual abuse. Indeed, as Castillo tells it, all there is "is a one sentence description of the physical conduct involved, the assertion that it occurred within the same three-year period as conduct which ostensibly did constitute criminal sexual abuse, and no information relating to the circumstances surrounding the conduct on which the conviction is based."

Meanwhile, the government's take (argument (1) as earlier referenced) is that Castillo's attempt to pull down FM-2's pants is either part of the offense of conviction or "relevant conduct," and either way that conduct constitutes an attempt to commit sexual abuse. More particularly, in the government's telling, Castillo's attempt to pull FM-2's pants down was part of the offense of conviction, pointing in support to the indictment's wide time range and the supposition that it therefore could have covered multiple incidents of sexual contact with FM-2 during that

window of time.  Alternatively, the government says that the attempt as to FM-2's pants was relevant conduct because it occurred during the commission of the offense of conviction -- it was part of the same course of abusive conduct (same timeframe, same victim, same location (Germany)).

We find that the conduct "offense of conviction" covers necessarily is limited to Castillo's touching of FM-2's inner thigh -- that's the conduct the statute of conviction prohibits.  See 18 U.S.C. § 2244 (prohibiting "sexual contact" with a minor under 12); 18 U.S.C. § 2246(3) (defining "sexual contact" as "the intentional touching, either directly or through the clothing, of the . . . inner thigh . . . of any person with an intent to . . . arouse or gratify the sexual desire of any person").  In evaluating the scope of the offense of conviction, we consider the language of the statute.  We took this statutory-language approach in United States v. Gonyer, 761 F.3d 157 (1st Cir. 2014), to pin down a definition of the offense of conviction.  There, a jury convicted the defendant of sexual exploitation of a minor and possession of child pornography based on his sexual abuse of the same teenage victim the defendant had also convinced to send him sexually explicit images.  Id. at 160-61.  At sentencing, the district court in Gonyer applied a two-level enhancement based on the victim's age.  Id. at 164.  That particular enhancement, the relevant Guideline tells us, applies when "the offense involved a minor who

had . . . attained the age of twelve years but not attained the age of sixteen years."  Id. at 165 (quoting USSG § 2G2.1(b)(1)(B)). A panel of this court observed that

> [t]he district court acknowledged that [the victim] was sixteen years old when he took the photographs that prompted the charges against Gonyer.  The court noted, however, that to prove the charges of sexual exploitation of which Gonyer was convicted, the prosecution was required to show that Gonyer employed, used, persuaded, induced, enticed, or coerced [the victim] to engage in the sexually explicit conduct depicted in the photographs, see 18 U.S.C. § 2251(a), and concluded that the "process of enticement" took place "over the year preceding the time that the photographs were taken," beginning when [the victim] was fifteen years old.  The court then explained that it would apply the age-of-the-victim enhancement "[b]ased on [its] analysis of the statute."

Id. The panel "affirm[ed] the district court's application of the age-of-the-victim enhancement based upon its conclusion . . . that Gonyer's conduct with [the victim] when the boy was fifteen was *part of the offense of conviction defined by the statute*."  Id. at 166 (emphasis added).

Taking the same approach here, the offense of conviction, as defined by the statute, is the touching of the inner thigh.

Next up, we consider whether any of the other acts to which Castillo admitted (attempting to pull down FM-2's pants, sexually abusing FM-1, and attempting to pull down FM-1's pants on different occasions) constitute "relevant conduct" here as the government argues.  The Guidelines define relevant conduct as "all

acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction."[6] USSG § 1B1.3(a)(1)(A). Persuasively addressing this, Castillo emphasizes that the touching of FM-2's inner thigh constituted a discrete, standalone act, not a continuing offense, and the PSR and Joint Factual Basis provide that Castillo's attempt to pull FM-2's pants down occurred "at another time" than the incident where he touched her inner thigh. The record shows that he's right. With respect to Castillo's sexual abuse of FM-1 and various attempts to pull FM-1's pants down, there is no information in the Joint Factual Basis, the PSR, or elsewhere in this record that indicates how close in time that conduct was to the offense of conviction (the sexual contact with FM-2).[7] Accordingly, given this lack of contemporaneity, none of Castillo's other admitted acts can be labeled "relevant conduct" since they did not transpire "during the commission of the offense of conviction."

---

[6] By the way, the definition of relevant conduct also touches on acts taken "in preparation for" the offense of conviction "or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1)(A). But the government has not asserted that Castillo's admitted acts fall into either of these other relevant-conduct categories, so we do not go there.

[7] In fact, beyond a dearth of evidence as to specifically when and where this took place, there's a similar question mark hanging over whether anyone else was nearby at the time, what, if anything, was said by either Castillo or his granddaughter, how the episode came to an end, etc. And furthermore, there is no evidence suggesting how close in time this act transpired as compared to the other incidents laid out in the Joint Factual Basis.

In an effort to thwart this conclusion, the government points, for example, to the Second Circuit's United States v. Ahders, 622 F.3d 115 (2d Cir. 2010), and the Tenth Circuit's opinion in United States v. West, 576 F. App'x 729 (10th Cir. 2014). But neither case persuades.

Consider the facts and reasoning of each. In Ahders, the defendant pled guilty to the production of pornography with respect to one minor, then appealed his sentence. 622 F.3d at 117-19. The question presented for the court's consideration was whether conduct with respect to two other minors could be grouped and combined with his offense of conviction under USSG § 3D1.4 -- according to Ahders, the sentencing judge improperly considered those acts against the other two minors (which were not charged in the indictment) as relevant conduct when that other conduct was not cited in the count of conviction. Id. at 118-20. The court rejected Ahders' argument, reasoning that the conduct with respect to the two other minors "[c]learly" could be considered relevant conduct because it occurred "during the commission of the offense of conviction" (at the same time as the production of pornographic images of the first minor). Id. at 120.

Meanwhile, in West, the defendant was convicted of one count of sexual exploitation of a minor, the indictment charging that the count was based on his coercing the victim "to engage in sexually explicit conduct . . . for the purpose of producing a

visual depiction of such conduct." 576 F. App'x at 731. The sentencing judge applied an enhancement because the offense involved "sexual contact" -- the victim reported that, during the period alleged, West made her fondle and rub his genitals, and he'd put his genitals on her leg. Id. at 730-31. On appeal, West insisted this sexual contact was not relevant conduct because "nothing in the record ties the two crimes together except a common victim." Id. at 734. The court disagreed, having "no difficulty in concluding this 'sexual contact' occurred during the commission of the sexual exploitation of" the victim, id. -- because West engaged in an ongoing pattern of abuse that occurred "on an almost daily basis" over the course of a year, id. at 730, it was clear that the touching "occur[red] during the same time period as West's sexual exploitation of [the victim]," id. at 735. The court then concluded that the offense of conviction and the related conduct occurred "during the same proximate time." Id. at 735.

Neither case speaks to the situation here, where there is no evidence that the allegedly relevant conduct (the thigh-touching and pulling-down-the-pants episodes) took place at the same time, proximate or otherwise, as the conduct (a single discrete act) underlying the offense of conviction. Nothing in Ahders or West suggests that contemporaneity is not required, or that the flexible reading of "during" the government urges is

appropriate.[8]  The bottom line is that temporal overlap is necessary (even if not sufficient on its own) to find that other conduct is relevant on grounds that it occurred "during" the offense of conviction.  So, given these important distinctions, these cases do not persuade.

And, as our final point on the relevant-conduct issue, we observe that the structure of the Guidelines suggests that "during the commission of the offense of conviction" should be read narrowly:  the Guidelines juxtapose § 1B1.3(a)(1)'s "during the commission of the offense" standard with § 1B1.3(a)(2)'s broader standard, which defines relevant conduct as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."[9]  The Sixth

---

[8] And when there is a similarly clear lack of contemporaneity, courts have easily concluded that the supposedly relevant conduct did not occur "during" the commission of the offense of conviction. See United States v. Davis, 453 F. App'x 452, 462 (5th Cir. 2011) ("Davis correctly points out that his alleged misconduct with [the victim] did not occur during his offense of conviction, as it was alleged to have happened on and before February 22, 2005, while his charged conduct with [a different victim] occurred from on or about June 1, 2006 to September 22, 2006."); United States v. Weiner, 518 F. App'x 358, 365 (6th Cir. 2013) ("[N]one of the pre-charge sexual conduct with Victims No. 1, 2, and 3 occurred during the commission of the conviction offense.  The pre-charge sexual conduct was not contemporaneous with the use of the computer as asserted in the Information.").

[9] The government has not argued that USSG § 1B1.3(a)(2)'s broader standard applies here, and that's likely because it applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," § 1B1.3(a)(2) -- Castillo's offense of conviction (abusive sexual contact, § 2A3.4) is excluded from grouping under § 3D1.2(d). See

- 27 -

Circuit in United States v. Schock, 862 F.3d 563 (6th Cir. 2017), relied on this distinction when it concluded that certain conduct -- even if it was arguably part of the same pattern of abuse -- was not "relevant conduct" because it occurred at a different time than the discrete episode underlying the charged offense. Id. at 568-69; see also id. at 569 n.6 (declining to read USSG § 1B1.3(a)(1) "in a way that swallows the broader definition in USSG § 1B1.3(a)(2)" because the "distinction between (a)(1) and (a)(2) relevant conduct" is "one we must respect").

All of this to say: the sentencing judge should have considered only the touching of the inner thigh when determining whether the cross-reference provision was triggered here.

That settled, we confront the final inquiry. The offense clearly confined to Castillo's touching of FM-2's inner thigh only (since we just concluded that's the offense of conviction and there's no relevant conduct properly on the table), the question is whether that inner-thigh-touching offense "involved . . . an attempt to commit criminal sexual abuse." On the facts of this case, the touching of FM-2's inner thigh -- again, on its own -- is not sufficient to demonstrate by a preponderance of the evidence

---

United States v. Schock, 862 F.3d 563, 567 (6th Cir. 2017) (determining that "§ 1B1.3(a)(2)'s definition of relevant conduct does not apply in this case" because the offense of conviction was "explicitly excluded from § 3D1.2(d)'s multiple-count grouping rule").

that Castillo's intent was to commit sexual abuse.  We simply do not see sufficient evidentiary support that would tie the touching of the inner thigh to an intent to attempt a specific sexual act delineated in the statute.  Instead, all we have is the brief description of the thigh-touching incident itself, the statement that it took place in the same three-year timeframe as other concededly criminal sexual abuse, and that it occurred while the family was in Germany -- there is no information beyond that as to the specific factual circumstances leading up to, surrounding, and following the specific thigh-touching conduct on which Castillo's conviction is based.  Without specific facts to prompt this inferential conclusion by a preponderance of the evidence, reaching it requires impermissible speculation.

The government seeks to fend off this conclusion by averring that the PSR's facts are sufficiently detailed such that they can support an inference that Castillo was attempting to commit sexual abuse when he touched FM-2's inner thigh:  "the defendant started rubbing her inner thigh and she said it felt like he was trying to touch her private parts.  She stated she told him to stop and avoided being around him after that," the PSR explained.  But even if we were to assume that Castillo was about to or trying to touch FM-2's genitalia through her pants, this would amount to sexual contact, 18 U.S.C. § 2246(3) ("the intentional touching . . . through the clothing . . . of the

genitalia"), not a more egregious sexual act, 18 U.S.C. § 2246(2)(B), (D) (such as contact between mouth and genitalia or touching -- not through clothing -- of genitalia), constituting sexual abuse.

So here's where all of this leaves us. The district court justified its use of the cross-reference by explaining that "Mr. Castillo attempted to pull down the pants of one of the granddaughter[s] mentioned in the count of conviction, and the Court finds that it can be reasonably inferred that his intention was to commit a sexual act, particularly considering his acts against his other granddaughter." The record shows that the sentencing court did not provide any discussion of the Guidelines' language as it determined what conduct appropriately could be considered when calculating the applicable sentencing range -- and that calculation, of course, included whether to use the cross-reference. And as we've now determined, anything other than Castillo touching FM-2's inner thigh -- like his attempt to pull down FM-2's pants or his abuse of FM-1 -- was out of bounds for sentencing purposes, and it was error to rely on any other acts to infer the intent necessary for attempted sexual abuse.

No matter how you slice it, the admitted facts on the record here are repugnant. No one contests this. But within the confines of our sentencing jurisprudence, only one of those abhorrent acts is suitable for consideration in assessing the

appropriate sentence to be imposed on Castillo. And that, as they say, is that.

### WRAP-UP

And so, in the end, the sentencing judge erred when he relied on Castillo's attempt to pull his granddaughter's pants down, as well as his sexual abuse of his other granddaughter, to justify the application of the cross-reference provision in USSG § 2A3.4(c)(1). Indeed, the language of the statute of conviction and the applicable Guideline provisions, together, make clear that only the "offense of conviction" -- Castillo's touching of FM-2's inner thigh -- should have been taken into account when determining whether the cross-reference provision properly applied here. As we've assessed, that conduct alone is not enough to support application of the cross-reference.

In light of this conclusion, we have no need to reach Castillo's substantive reasonableness arguments. We **vacate** and **remand** for resentencing in accordance with this opinion.