**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KYLE AGUILAR,

    Defendant - Appellant.

No. 24-2146

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:21-CR-00670-JB-1)**

_____

Nicholas T. Hart, of Harrison & Hart, LLC, Albuquerque, New Mexico, for Defendant-Appellant.

James R.W. Braun, Assistant United States Attorney (Ryan Ellison, United States Attorney with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **CARSON**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

    Defendant-Appellant Kyle Aguilar seeks to have his two convictions for Abusive Sexual Contact in Indian Country in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3), vacated because he contends that (1) charging two such

violations for the same incident is multiplicitous in violation of the Double Jeopardy Clause and (2) neither of the convictions was supported by sufficient evidence. We conclude that the convictions are not multiplicitous and thus do not violate the Double Jeopardy Clause. We also conclude there was sufficient evidence to support Mr. Aguilar's convictions. We therefore **affirm** the district court's judgment.

## I

Mr. Aguilar was indicted and convicted by a jury of two counts of Abusive Sexual Contact in Indian Country in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3). The victim, P.C., was Mr. Aguilar's niece. P.C.'s grandmother was her primary guardian. P.C. lived with her grandmother, two sisters, and three uncles— Jonathan, Anthony, and Mr. Aguilar.

In February 2017, when she was twelve years old, P.C. stayed out all night with friends. The next morning, P.C.'s uncle, Jonathan, caught her attempting to sneak back into her room through a window. Jonathan became concerned that P.C. had been sexually active during her evening excursion and decided to drive her to a clinic to be seen by a doctor.

During the drive, P.C. told Jonathan that Mr. Aguilar had touched her inappropriately. She later testified that she "wanted [her] uncle to know that [she] wasn't being sexually active" and "did not want to go to the clinic" because she "knew that [she would] have to share what happened to [her]." R., Vol. III, at 366–67 (Trial Tr., dated Jan. 19–23, 2024). At the clinic, a doctor asked P.C. if she was safe at home, and she responded that she was not safe and did not want to be home

2

because she had been "touched" by "Uncle Kyle"—that is, Mr. Aguilar—and that this inappropriate touching had occurred on more than one occasion in the weeks before she was seen at the clinic. *Id.* at 366.

## II

A federal grand jury returned a three-count superseding indictment[1] against Mr. Aguilar based on P.C.'s allegations of "touching." Count 1 charged Mr. Aguilar with Abusive Sexual Contact by use of force in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3). Counts 2 and 3 charged Mr. Aguilar with abusive sexual contact in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3). More specifically, Count 2 charged Mr. Aguilar with touching P.C.'s genitalia, and Count 3 charged Mr. Aguilar with touching P.C.'s breasts—specifically, touching both "directly and through clothing, with the intent to abuse, humiliate, harass, degrade, arouse and gratify the sexual desire of any person." R., Vol. I, at 170 (Superseding Indictment, filed Oct. 4, 2023). Count 1 concerned a different incident than Counts 2 and 3.

The case proceeded to a three-day trial. The government put on six witnesses, including P.C. P.C. testified concerning two incidents in which she was inappropriately touched by Mr. Aguilar.

---

[1] Initially, Mr. Aguilar was indicted with two counts of Abusive Sexual Contact in Indian Country in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3).

3

The first incident pertains to the conduct charged in Counts 2 and 3, which is at issue on appeal. P.C. described the incident as follows during the government's direct examination:

> Q    All right. Now, you mentioned that your uncle had touched you. About how many times did this happen?
>
> A    About three times.
>
> Q    Let's start with the first time. Can you tell us if you remember what you were doing right before it happened?
>
> A    I had went [sic] in to my Uncle Anthony's room, so on the picture on the right back side.
>
> Q    This room right here?
>
> A    Yes. And I had put on a movie. I can't remember what movie I had put on. And my uncle's bedroom -- we didn't really have beds, so we used blankets for a bed on the floor. So I had laid down. I had locked the door previous to going in. And after a while, I just remember the door being unlocked from Kyle. And I can't remember what happened before, or as he walked in, or if there was a conversation. But I just remember him laying [sic] down behind me and just giving me a back massage. And then just touching me.
>
> Q    You said he was just touching you. Where was he touching you?
>
> A    On my butt, and then my breasts over my bra, and then my private part over my clothes.
>
> Q    Just so we're clear, you said your "private part" over your clothes?
>
> A    Yes.
>
> Q    Is there another name for that part of your body?
>
> A    My vagina.
>
> Q    While this was going on, did he say anything to you?

4

A    I can't remember.  I froze up.

Q    How were your clothes?  Did they stay on your body?

A    Yes, because I said that my sister was calling me, or I was just going to go check on them.  So I got up and I went outside.

Q    Let me get that straight.  You said you told him you heard your sisters calling, so you got up and went outside?

A    Yes.

Q    How did he react when you did that?

A    I don't know.  I got up quick[ly], and I just walked out.

*Id.*, Vol. III, at 367–69.

P.C. also testified to a second incident of inappropriate touching, which occurred a few weeks later and gave rise to Count 1.  Because Mr. Aguilar was acquitted on Count 1, this second incident is not directly at issue on appeal.  However, P.C.'s testimony that Mr. Aguilar engaged in inappropriate touching on another occasion is relevant in showing that his intent during the first incident—which is at issue here—was to gratify his sexual desire.  The second incident occurred after school, when P.C., P.C.'s sister, and friends returned to P.C.'s grandmother's house to watch a movie in the living room.  Mr. Aguilar was home, and P.C. testified that "he had been drinking that day."  *Id.* at 371.  According to P.C., Mr. Aguilar began "trying to get [her] attention" by "waving his hand" and "calling [her] name from the kitchen."  *Id.*  The girls retreated to P.C.'s room.  P.C. stated that they did so "because [Mr. Aguilar] was bugging."  *Id.* at 377.

5

But, according to P.C., Mr. Aguilar was undeterred by their retreat.  He "kept trying to call [her]" and "knocking at [her] room door."  *Id.* at 371.  "[H]e would come back like every five to ten minutes" to repeat to P.C. that "he had something to show [her]."  *Id.* at 371–72.  P.C. testified that, during this period, she felt "uncomfortable and scared" because of "what he did to [her] the first time."  *Id.* at 379.

Eventually, Mr. Aguilar entered the room.  P.C. testified that although she had locked the door to her room, Mr. Aguilar used something to release the lock and enter.  P.C. described the following incident this way:

> [H]e opened the door at some point and was looking for me.  So I hid into the closet.  And I told my sister and my friend to say that I had left, that I had went [sic] outside.  So then after that, he was still asking for me.  And he was saying I was in the closet.  So I had finally just came [sic] out of the closet.  And I told him to go away, to leave me alone.
>
> . . . So then again he left.  And then he came back.  And I was sitting on the bed still, and after a while I just ignored what he was telling me, didn't respond.  And then he came back again.  As we heard him walking down from, like, the living room into the hallway, I hid between the bed and the wall.
>
> . . . [I]t was just the bed and there was no frame.  So I pushed the bed, and I hid in between the bed and the wall.  And I told my sisters and my friend to cover me with pillows and blankets so he wouldn't see.  So they sat there on the bed.  But I guess he can see beside me, but, like, on top of the blankets and the pillows, and they were telling him that I wasn't in there.  So he was basically searching the room, the closet, because that's where I hid the first time.
>
> He checked on the bed.  So everybody got up.  So he was like feeling the blankets and the pillows to see if, like, somebody was laying [sic] there.  And then after that, he had seen my feet because they weren't covered right.  So he was trying to pull the blankets off of me.  But I

6

had them like firmly covered, covering, like, my body from my calves up. I was able to get a little of the blanket in front of me. And he was, like, he put his hand through the blanket, and he was, like, basically touching my body.

He had pulled the side of my shirt, and then he went to my thigh, and he ran his finger through my thighs and my private parts. And then after that had happened, I had uncovered myself. And I just remember seeing my friend standing there by the closet, and then my sister standing, like, close by the door. I had looked at them, and we had made that eye contact, like just weird faces, facial expressions. And I just started explaining myself -- or I don't know, tried to explain what happened. But I just remember talking, and saying that that was nasty. And we were like all just sitting there.

So my friend said that she was uncomfortable and wanted to go home. . . . So we had left and I walked her home. So as I was outside with her outside of her house -- because we had walked -- I had told her to come over tomorrow or the next day, and she said that she didn't want to.

*Id.* at 372–74.

After the government rested, Mr. Aguilar unsuccessfully moved for a judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29(a). Mr. Aguilar put on two witnesses in his defense: Anthony Sanchez (Mr. Aguilar's brother and one of the three uncles who lived with P.C.) and himself. Mr. Sanchez testified that he had not observed Mr. Aguilar engage in any type of inappropriate touching or sexual comments with respect to P.C. And Mr. Aguilar denied ever having sexual contact with P.C.

The jury returned a verdict of not guilty on Count 1 and guilty on Counts 2 and 3. After the jury returned its verdict, Mr. Aguilar again moved for a judgment of

7

acquittal under Rule 29(a).  In this post-verdict motion, he introduced the intent

argument he now advances on appeal:

> A touching, on its own, is not sufficient evidence to establish an intent to commit sexual abuse.  *See United States v. Castillo*, 981 F.3d 94 (1st Cir. 2020).  Here, the only testimony and evidence presented by the government was P.C.'s testimony that Mr. Aguilar touched her breasts and vagina over her clothes.  But P.C. was unable to remember any conversation with Mr. Aguilar and described Mr. Aguilar's behavior as "normal."  Defendant Kyle Aguilar therefore moves, according to Federal Rule of Criminal Procedure 29, for judgment of acquittal on Counts 2 and 3 because no reasonable jury could conclude, based on the limited testimony presented, that Mr. Aguilar intended to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

*Id.*, Vol. I, at 666 (Def. Kyle Aguilar's Mot. for Acquittal, filed Feb. 16, 2024).

Mr. Aguilar also filed a motion to merge Counts 2 and 3 into a single count of

conviction under the theory that those counts were multiplicitous and therefore

violated the Fifth Amendment's Double Jeopardy Clause.  Mr. Aguilar also raises

this argument on appeal.

The district court denied both motions.  As to Mr. Aguilar's post-trial Rule 29

motion, the district court concluded that, viewing the evidence in the light most

favorable to the government, "[P.C.'s] testimony provides sufficient evidence on

which the jury could infer that [Mr.] Aguilar touched [P.C.'s] buttocks, genitalia, and

breasts with the intent 'to abuse, humiliate, harass, degrade, or arouse or gratify the

sexual desire of any person.'  More specifically, he did these acts to arouse or gratify

himself sexually."  *Id.* at 841 (Mem. Op. and Order, filed July 12, 2024) (quoting 18

U.S.C. § 2246(3)).  The district court also determined "that evidence from the trial

8

record as a whole provide[d] sufficient evidence" as to Mr. Aguilar's intent. *Id.* at 842.

As to Mr. Aguilar's double-jeopardy claim, the district court concluded that Counts 2 and 3 were not multiplicitous because "Congress's intent was to punish separately touching each protected area of a victim enumerated." *Id.* at 776 (Order, filed May 9, 2024). More specifically, the district court concluded as a matter of text, legislative history, and precedent that Congress intended each act of touching to be a distinct "unit[] of prosecution." *Id.* (quoting *United States v. Elliott*, 937 F.3d 1310, 1313 (10th Cir. 2019)). Finally, because the district court found the statute unambiguous, it determined that the rule of lenity did not apply.

The district court sentenced Mr. Aguilar to 24 months' imprisonment on each of Counts 2 and 3, to run consecutively, for a total sentence of 48 months' imprisonment. Mr. Aguilar appealed.

## III

"We review claims of multiplicity de novo." *Elliott*, 937 F.3d at 1313 (quoting *United States v. Benoit*, 713 F.3d 1, 12 (10th Cir. 2013)). "We [also] review the denial of a judgment of acquittal for insufficient evidence de novo." *United States v. Garcia*, 74 F.4th 1073, 1117 (10th Cir. 2023). As to the latter, our task is to "determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Stepp*, 89 F.4th 826, 831–32

9

(10th Cir. 2023) (quoting *United States v. Gordon*, 710 F.3d 1124, 1141 (10th Cir. 2013)).

## A

On appeal, Mr. Aguilar contends that his convictions on Counts 2 and 3 are multiplicitous and, thus, violate the Double Jeopardy Clause. More specifically, he argues that because he was convicted "for touching two body parts in rapid succession during a single, fast encounter . . . [the] facts cannot support convictions under two separate counts." Aplt.'s Opening Br. at 17 (quotation marks omitted). In this regard, Mr. Aguilar contends that "[t]he unit of prosecution under Section 2246(3) includes multiple touches in a single course of conduct." *Id.* at 19. In the alternative, if we "believe[] that there is ambiguity," reasons Mr. Aguilar, we should nonetheless determine this challenge in his favor under the rule of lenity. *Id.* at 23. Mr. Aguilar also attacks the sufficiency of the evidence—specifically targeting only the first element of the Abusive Sexual Contact offense charged in Counts 2 and 3. Specifically, he contends that because "there was no evidence that a reasonable trier of fact could rely on to infer [the] intent" required by the statute, "[Mr.] Aguilar's convictions for abus[ive] sexual contact with a minor are . . . not supported by sufficient evidence." *Id.* at 18.

The government maintains that Counts 2 and 3 are not multiplicitous. According to the government, the plain text of §§ 2244(a)(3) and 2246(3) permits the government to "bring separate charges for two instances of touching that have, as their object, two different body parts." Aplee.'s Resp. Br. at 23–24. And here,

10

"because [Mr.] Aguilar's conviction on count 2 involves his touching [P.C.'s] genitalia and his conviction on count 3 involves his touching [P.C.'s] breast, each charge corresponds to a proper unit of prosecution." *Id.* at 24. Thus, the government urges that Counts 2 and 3 do not present a double-jeopardy problem (and the rule of lenity does not apply). The government also argues that "the United States presented sufficient evidence from which a rational jury could reasonably find that [Mr.] Aguilar touched [P.C.] with the requisite intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* at 26.[2]

**B**

As further explained below, we first conclude that Counts 2 and 3 of Mr. Aguilar's indictment are not multiplicitous because Abusive Sexual Contact under 18 U.S.C. §§ 2244(a)(3) and 2246(3) is a separate-act offense. Thus, an indictment can charge multiple violations without posing double-jeopardy problems. Second, we conclude there was sufficient evidence, when taken in the light most favorable to the government, for a reasonable jury to find beyond a reasonable doubt that Mr. Aguilar acted with the requisite intent under 18 U.S.C. §§ 2244(a)(3) and 2246(3).

---

[2] At our request, both parties submitted supplemental briefs discussing the impact (if any) of *United States v. Garcia-Limon*, 146 F.4th 885, 889 (10th Cir. 2025). The government's brief was filed one day late alongside an Unopposed Motion for Leave to File Supplemental Brief Out of Time. This motion is **granted**.

**1**

The Double Jeopardy Clause "protects a defendant 'against cumulative punishments for convictions on the same offense.'" *Benoit*, 713 F.3d at 12 (quoting *Ohio v. Johnson*, 467 U.S. 493, 500 (1984)); *accord Elliott*, 937 F.3d at 1313. "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (quoting *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997)). "Although 'multiplicity is not fatal to an indictment,' multiplicitous counts which may result in multiplicitous convictions are considered 'improper because they allow multiple punishments for a single criminal offense.'" *Id.* (citations omitted) (first quoting *Johnson*, 130 F.3d at 1424; then quoting *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir. 2002)).

Accordingly, where, as here, an indictment charges multiple violations of the same statute, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *Elliott*, 937 F.3d at 1313 (quoting *United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009)). "The relevant unit of prosecution means the 'minimum amount of activity for which criminal liability attaches' for any charge under an applicable criminal statute." *United States v. Maldonado-Passage*, 56 F.4th 830, 839 (10th Cir. 2022) (quoting *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (en banc)).

"Determining the unit of prosecution is 'a matter of statutory interpretation.'" *Elliott*, 937 F.3d at 1313 (quoting *Rentz*, 777 F.3d at 1109 n.4). Thus, we must look

at the relevant statute and ask whether it prohibits individual acts or a course of action. *See United States v. Graham*, 305 F.3d 1094, 1100 (10th Cir. 2002) ("The test is whether the individual acts are prohibited, or the course of [conduct] which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty." (alteration in original) (quoting *Blockburger v. United States*, 284 U.S. 299, 302 (1932))).

For our purposes here, we refer to crimes that originate from statutes that criminalize individual acts as "separate-act offenses." We refer to crimes that originate from statutes that criminalize a course of action as "course-of-conduct offenses." As such, an indictment can charge multiple violations of the same statute involving the same incident—without posing double-jeopardy issues—if the crime is a separate-act offense. An indictment that charges multiple violations of the same statute involving the same incident poses double-jeopardy problems if the crime is a course-of-conduct offense. *See id.*

So naturally, our task here is to decide whether Abusive Sexual Contact under 18 U.S.C. §§ 2244(a)(3) and 2246(3) is a separate-act offense or course-of-conduct offense. We begin our statutory analysis "where we always do: with the text of the statute." *United States v. Garcia-Limon*, 146 F.4th 885, 896 (10th Cir. 2025) (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)), *cert. denied*, No. 25-6199, 2026 WL 79958 (U.S. Jan. 12, 2026). Our tools of interpretation "include examination of the statute's text, structure, purpose, history, and relationship to other statutes." *Elliott*, 937 F.3d at 1315 (quoting *Harbert v. Healthcare Servs. Grp., Inc.*,

13

391 F.3d 1140, 1147 (10th Cir. 2004)).  "If, after employing the usual tools of statutory interpretation, we are left with a 'grievous ambiguity or uncertainty' concerning the statute, we employ the rule of lenity."  *Id.* (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)); *see also Bell v. United States*, 349 U.S. 81, 84 (1955) ("[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . . .").

Section 2246(3) provides that "the term 'sexual contact' means *the* intentional *touching*, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, *or* buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3) (emphases added).  Two grammatical features of the statutory text are telling here.  First, the statute uses singular language: "*the* intentional *touching*."  *Id.* (emphasis added).  "Congress's use of a singular noun often sheds insight into the meaning." *St. Francis Hosp., Inc. v. Becerra*, 28 F.4th 119, 123 (10th Cir. 2022).  Here, we think it suggests that Congress contemplated criminal liability for singular action.  Second, the list of body parts enumerated in the statute is phrased in the disjunctive. *See* 18 U.S.C. § 2246(3) (enumerating "the genitalia, anus, groin, breast, inner thigh, *or* buttocks" as body parts that can form the basis for sexual contact (emphasis added)).  The disjunctive structure of the statute suggests that Congress intended the unit of prosecution to include *each instance* of "intentional touching" of an enumerated body part.  In sum, as we interpret the statute, the singular language and

14

disjunctive structure of § 2246(3) suggest that Congress intended Abusive Sexual

Contact to be a separate-act offense.

The Eighth Circuit's decisions in *United States v. Two Elk*, 536 F.3d 890 (8th Cir.

2008) and *United States v. Hollow Horn Bear*, 144 F.4th 1105 (8th Cir. 2025), are

authorities that persuasively support the foregoing textual analysis.  In *Two Elk*, the

Eighth Circuit found a separate-act offense in the text of § 2241(c) (Aggravated Sexual

Abuse).  *See* 536 F.3d at 898.  That statute provides: "[w]hoever ... knowingly engages *in*

*a sexual* act with another person who has not attained the age of 12 years, . . . or attempts

to do so, shall be fined under this title and imprisoned for not less than 30 years or for

life."  18 U.S.C. § 2241(c) (emphasis added).  The court relied on the statute's singular

language and disjunctive structure:

> The plain language of § 2241(c) states that a person commits aggravated sexual abuse by "engag[ing] in *a sexual act* with another person." (Emphasis added).  The statute does not say "sexual act or acts," or "sexual course of conduct."  Each of the permutations enumerated in § 2246(2) constitutes *a* sexual act and they are linked in the disjunctive.  It follows, then, that engaging in multiple sexual acts (as listed in § 2246(2)) would amount to multiple violations of § 2241(c) and would leave the perpetrator susceptible to multiple punishments thereunder.

536 F.3d at 899 (alteration in original).

Later, in *Hollow Horn Bear*, the Eighth Circuit held that "[t]he same reasoning

applies" to § 2244(a) because it "mirrors § 2241 in its construction, though it applies to

'sexual contact' rather than a 'sexual act.'"  144 F.4th at 1110.  The court explained that

§ 2244(a)—the statute directly at issue here—did not reference "a 'course of conduct' or

use[] the plural form 'contacts'" and that "these provisions reflect Congress's intent to treat discrete sexual contacts as separate criminal acts." *Id.*

Considering the foregoing, we conclude that Abusive Sexual Contact under 18 U.S.C. §§ 2244(a)(3) and 2246(3), is a separate act offense and thus poses no double-jeopardy problems when, as here, multiple violations involving the same incident are charged in an indictment. This conclusion precludes the notion that the statute is plagued by any "grievous ambiguity or uncertainty"; thus, we do not employ the rule of lenity. *Elliott*, 937 F.3d at 1313 (quoting *Muscarello*, 524 U.S. at 139).

**2**

We turn to Mr. Aguilar's sufficiency-of-the-evidence argument. "A judgment of acquittal is appropriate only if a finding of an element of a crime beyond a reasonable doubt could not have been based on evidence and inferences reasonably drawn from evidence or where the guilty verdict rested only on a series of inferences." *Garcia*, 74 F.4th at 1117; *United States v. Bowie*, 892 F.2d 1494, 1497 (10th Cir. 1990) ("The test is this: on the basis of the whole record, '[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" (alteration in original) (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986))).

For the jury to find Mr. Aguilar guilty of Counts 2 and 3, the government was required to prove the following elements beyond a reasonable doubt: *First*, that Mr.

16

Aguilar "knowingly engage[d] in or cause[d] sexual contact" with P.C., 18 U.S.C. § 2244(a); *see also* 18 U.S.C. § 2246(3) ("[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."); *second*, that P.C. was a person who "ha[d] attained the age of 12 years but ha[d] not attained the age of 16 years," 18 U.S.C. § 2243(a)(1); *third*, that Mr. Aguilar is an Indian, *see* 18 U.S.C. § 1153(a); and *fourth*, that the offense took place in Indian country, *see id.* Mr. Aguilar only challenges the intent component of the first element—which is incorporated into the definition of "sexual contact."

Here, the district court concluded that, viewing the evidence in the light most favorable to the government, "[P.C.'s] testimony provides sufficient evidence on which the jury could infer that [Mr.] Aguilar touched [P.C.'s] buttocks, genitalia, and breasts with the intent . . . to arouse or gratify himself sexually." R., Vol. I, at 841. The trial record supports this conclusion. Notably, P.C. testified that the first incident proceeded as follows: she lay down on some blankets on the floor of her uncle's bedroom after locking the door; Mr. Aguilar unlocked the door, entered, and lay down behind her; Mr. Aguilar began to massage her back; Mr. Aguilar then touched P.C. on her buttocks, breasts, and vagina; she froze up and "just laid there" until, eventually, she walked out of the room. R. Vol. III, at 367–70. A reasonable jury could credit P.C.'s testimony as evidence of Mr. Aguilar's intent to arouse or gratify himself sexually by touching her buttocks, breasts, and vagina.

17

Put simply, a reasonable jury could infer that Mr. Aguilar touched P.C. during the period charged in the indictment with the intent to gratify himself sexually—in the illicit manner that the statute proscribed—based on the body parts P.C. testified that he touched, the massage that he gave to her, and other circumstantial factors. We especially note P.C.'s testimony that Mr. Aguilar touched multiple intimate body parts during the incident at issue and that he also touched her genitals again on a separate occasion; such evidence tends to exclude any purpose other than sexual gratification. Additionally, Mr. Aguilar "testified and swore [he] did not engage in the crimes charged." *United States v. Xiang*, 12 F.4th 1176, 1185 (10th Cir. 2021). However, "a statement by a defendant, if disbelieved by the jury may be considered as *substantive* evidence of the defendant's guilt." *Id.* (quoting *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995)).

Mr. Aguilar argues that several cases the district court cited are factually distinguishable from his case—because, for instance, Mr. Aguilar did not touch P.C. while she was asleep or "rub[]" her genitals. *See* Aplt.'s Opening Br. at 29–31. But "sufficiency of the evidence determinations are made by assessing the totality of the circumstances *in the individual case*." *United States v. Rufai*, 732 F.3d 1175, 1194 (10th Cir. 2013) (alteration omitted) (emphasis added) (quoting *Torres v. Mullin*, 317 F.3d 1145, 1164 (10th Cir. 2003)). In other words, the absence of facts such as a sleeping victim or genital-rubbing have little bearing on the question presented here—*viz.*, whether the evidence *in Mr. Aguilar's case*, viewed in the light most

18

favorable to the government, was sufficient to support his abusive sexual contact convictions on Counts 2 and 3.  We conclude that it was.

Stated otherwise, we determine that a reasonable jury could infer from P.C.'s testimony that Mr. Aguilar touched P.C. with the requisite intent.  And because intent is the only component of Mr. Aguilar's offenses that he challenges on appeal, we conclude that the jury's verdict of guilt as to both of the charged counts rested on sufficient evidence.  We underscore in reaching this decision that, in reviewing the sufficiency of the evidence, "we neither weigh the evidence nor judge witness credibility," *Garcia*, 74 F.4th at 1117; instead, we ask only whether, viewed in the light most favorable to the government, "the evidence was so far removed from the facts necessary to prove the elements of the crime that a rational jury could not find guilt beyond a reasonable doubt." *Id.*  Here, the testimony from P.C. was enough to show that the evidence was not "so far removed" from the facts necessary to show intent to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," 18 U.S.C. § 2246(3), to support Mr. Aguilar's convictions.  Thus, we uphold those convictions and reject Mr. Aguilar's challenge to the sufficiency of the evidence.

## IV

For the foregoing reasons, we reject Mr. Aguilar's arguments for reversal of his convictions and affirm the district court's judgment.